*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* B. K. RITCHIE, Minor.

UNPUBLISHED
October 13, 2022

No. 360269
Macomb Circuit Court
Family Division
LC No. 2019-000119-NA

Before: SWARTZLE, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Respondent was diagnosed with bipolar disorder and attention-deficit disorder after she was involuntarily hospitalized for her mental health. She did not meaningfully continue psychotropic medications and therapy after she was discharged from the hospital, and her unstable mental health interfered with her ability to parent her child. As a result, the Department of Health and Human Services petitioned to remove the child from her care. Respondent was not able to rectify her barriers to reunification, and the trial court terminated her parental rights to the child under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

The Department filed the initial petition in this case after it was reported that respondent was not sending her special-needs child, with autism-spectrum disorder, to school, and that she had contacted law enforcement more than 41 times to complain about the smell of her home. Respondent was involuntarily hospitalized for psychiatric treatment after the petition was filed, and she entered a no-contest plea regarding the court's jurisdiction over the child. Respondent's treatment plan included services to address her mental health issues, parenting skills, housing instability, and financial instability.

The trial court returned the child to respondent after it had been determined that she followed her treatment plan for 18 months. Unfortunately, respondent then had a mental-health crisis that involved her physically and emotionally abusing the child. The child was once again removed from respondent's care, and the Department moved to terminate respondent's parental rights. After the child was removed, and the termination petition was filed, respondent was again involuntarily hospitalized for her mental health.

The trial court found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). After a separate hearing, it also found that

-1-

termination of respondent's parental rights was in the child's best interests. Respondent now appeals, first arguing that the Department did not make reasonable efforts for reunification.

"We review the trial court's findings regarding reasonable efforts for clear error." *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

Before the Department filed a petition to remove the child from respondent's care, the Department offered respondent services, including a mental-health evaluation, that respondent refused until she was involuntarily admitted to the hospital.

After the Department filed the petition, and throughout the pendency of this case, it was reported that respondent refused to take her prescribed medication, refused to attend psychiatric appointments, and refused to accept any other diagnosis besides attention-deficit-hyperactive disorder. Respondent also refused to engaged in crisis-intervention services, refused parenting services that afforded her financial stability, and she did not meaningfully engage with in-home services that were intended to help her parent a special-needs child. Moreover, respondent testified that it had become stressful to book appointments for her recommended services to help with the child, and she described some of the services as being a burden on top of the other things that she had to do. Respondent was also provided in-home assistance with housing resources, schooling supplies, budgeting assistance, and coping skills to provide stability to her home.

Even though the Department "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). The record indicates that the Department offered respondent several services to help reunify her with the child, but respondent refused to participate in the services that were offered.

Respondent also challenges the trial court's finding that the termination of her parental rights was in the child's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). With respect to the children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted).

The child was eight years old at the time of the termination, and he displayed extreme behavioral issues that led to him being diagnosed with autism-spectrum disorder, post-traumatic stress disorder, and anxiety. The child's treating therapist opined that the child would not be able to heal and address his trauma until he had some permanency in his life. Unfortunately, respondent had yet to achieve the stability necessary to care for herself let alone the stability necessary to care for a special-needs child. It is clear that the child would be at risk of harm and neglect in respondent's care. Specifically, respondent would describe the child's expressions during therapy as being hurtful to her and motivated by his foster family's influence, instead of fostering support for the child. Respondent also failed to keep the child in school, disenrolling him for concerns about the curriculum while not making any other plans for his education.

At the time of termination, the child was in a foster home that was meeting his special needs in which it was reported that his development was progressing. In addition, the foster parents had expressed a willingness to adopt the child. The child's well-being while in the care of his foster family, as contrasted to his well-being while in the care of respondent, demonstrates that termination and adoption were in the best interests of the child. *Id*. The stability and permanence that the foster family could provide the child outweighs mother's lack of ability to care for the child in a meaningful way. Respondent's lack of parenting skills, and her unwillingness to take consistent steps to treat her mental health, demonstrates that termination was in the child's best interests. See *id*. at 41-42.

Given the evidence presented in this case, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. Accordingly, the trial court did not clearly err when it found that the Department had expended reasonable efforts, through the services provided, to reunify respondent with the child, nor did the trial court err in finding that the termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ James Robert Redford